IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

GEORGE BRUMMITT,                    *
                                    *
        Plaintiff                   *
                                    *
v.                                  *    **Case Number 2:05 CV-537-F**
                                    *
EQUIFAX INFORMATION SERVICES,       *
LLC, et al.,                        *
                                    *
        Defendants.                 *

## MOTION TO COMPEL ARBITRATION

**COMES NOW** Defendant, GreenPoint Credit LLC ("GreenPoint"), by and through counsel of record, and moves this Honorable Court to stay these proceedings and compel arbitration and in support thereof shows as follows:

### UNDISPUTED FACTS

1.    On or about the 28th day of September, 2000, the Plaintiff, George Brummitt ("Plaintiff") entered into a **RETAIL INSTALLMENT CONTRACT, SECURITY AGREEMENT, WAIVER OF TRIAL BY JURY AND AGREEMENT TO ARBITRATION OR REFERENCE OR TRIAL BY JUDGE ALONE** (the "Contract"), a true and correct copy of which is attached hereto as Exhibit "A" and made a part hereof by reference, for the purchase of a 2000 Palm Harbor Homes Model 2348B manufactured home, Serial No. PH233087A&B (the "manufactured home"). Plaintiff purchased the home from GreenPoint Credit, LLC.

2.    The Contract, voluntarily signed by Plaintiff after being given an opportunity to review it, set forth the terms and conditions for the financing of the sale of the manufactured home. Plaintiff was listed as the Buyer. GreenPoint was listed as the Seller.

1

3.    The Contract executed by Plaintiff and GreenPoint contains an "**ARBITRATION**

**CLAUSE**", which provides as follows:

> "**ARBITRATION CLAUSE:**
>
> **IMPORTANT – PLEASE READ – ARBITRATION LIMITS YOUR LEGAL RIGHTS**
>
> 1.    **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
> 2.    **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
> 3.    **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, this Contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Contract) shall, at your or our selection, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You may choose any one of the following arbitration organizations and its applicable rules: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), or JAMS, 235 Peachtree St., NE, 800 North Tower, Atlanta, GA 30303 (www.jamsdr.com). You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website. This Arbitration Clause is intended to be interpreted as broadly as possible.
>
> You and we understand and agree that if either you or we choose to arbitrate our dispute there will be no trial by jury or other judicial proceeding. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitrator shall have the authority to order specific

2

performance and monetary damages, including punitive damages, or provide any relief allowed by applicable law. Any award, however, must comport with, and not violate, any applicable law, including any applicable statutory, common law or constitutional limits on punitive damages. The arbitration hearing shall be conducted in the federal district in which you reside. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1,500. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. The arbitrator's award shall be final and binding on all parties, except that the losing party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 *et. seq.*) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within the court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this Contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

By signing this Contract, you and we each understand and agree to be bound by the terms of this Arbitration Clause, and expressly waive your and our right to trial by jury and judicial process and review except as specifically set forth herein.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS ARBITRATION CLAUSE BEFORE YOU SIGN THE CONTRACT. BY SIGNING THIS CONTRACT, YOU ARE SAYING THAT YOU HAVE READ AND UNDERSTAND THIS ARBITRATION CLAUSE AND HAVE RECEIVED A COPY OF IT."**

4.    GreenPoint is a limited liability corporation with its principal place of business in San Diego, California and is authorized to do business in the State of Alabama. During the pertinent time frame, GreenPoint regularly funded contracts involving the purchase of manufactured homes. GreenPoint has funded the purchase of manufactured home contracts in several states including Alabama, Florida, Georgia and Mississippi. When GreenPoint funded

the contract involving manufactured homes, funds traveled in interstate commerce. In this case, when Plaintiff purchased the manufactured home, funds traveled in interstate commerce. The original documents pertaining to the manufactured home and all manufactured homes in which GreenPoint has a security interest are housed in San Diego, California.

5.    The financing of manufactured homes is heavily regulated by the Congress of the United States. See Truth-in-Lending Act, 15 U.S.C. §1601 *et seq.*; See also Federal Reserve Board Regulation Z, 12 C.F.R. Part 226, *et seq.*

6.    All documents and forms signed by Plaintiff were presented to Plaintiff by GreenPoint.

7.    Plaintiff or someone designated by Plaintiff has been in possession of the manufactured home from late September or early October 2000 to the present.

8.    GreenPoint submitted credit reports to credit bureaus on this account from November 2000 through October 2004. Effective November 1, 2004, Green Tree Servicing, LLC began servicing this manufactured home account for GreenPoint, and has submitted information to credit bureaus on this account since that date.

9.    GreenPoint submits in support of this pleading the affidavit of Earl Baker, attached hereto as Exhibit "B" and made a part hereof by reference.

<u>MOTION TO COMPEL ARBITRATION</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* applies to the transaction described in this motion. The FAA, § 2 provides, in pertinent part, that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract." The Supreme Court has held that "the word

[']involving['] is broad and is indeed the functional equivalent of [']affecting[']" *Allied-Bruce*

*Terminix Cos. , v. Dobson*, 115 S.Ct. 834; 1995, 130 L.Ed. 2d 753.

It appears undisputed that Plaintiff had ample opportunity to review the paper work for

the purchase of the manufactured home and that Plaintiff signed the Contract. It is submitted

that since Plaintiff had the ability to read, Plaintiff cannot now avoid the obligations embodied in

the Contract by pleading ignorance of its contents. "[I]t is well settled that if a competent adult,

who has the ability to read and understand, signs an instrument, that individual will be

considered to possess notice of all the provisions contained in the instrument and will be bound

by those provisions." *Finch v. Auburn Nat. Bank of Auburn,* 646 So.2d 64 (Ala.Civ.App. 1994);

*Power Equipment v. First Alabama Bank,* 585 So.2d 1291 (Ala. 1991). The above was reiterated

by the Supreme Court in *Ex parte Stripling,* 694 So. 2d 1281 (Ala. 1997) and *Locklear Dodge*

*City, Inc. v. Kimbrell*, 703 So.2d 303 (Ala. 1997).

In the *Power Equipment* case, Power Equipment argued that a feature in the note should

have specifically been brought to the attention of one of the persons signing the note. The court

found that the person signing the note had an opportunity to read the note in question before

signing it, but he failed to do so. The court stated that the law is clear that in absence of fraud or

misrepresentation, a party is bound by the terms of a contract, even if he fails to read it. See

*Power Equipment v. First Alabama Bank,* 585 So. 2d at 1296. The above applies even where

fraud is alleged. See *Tillery v. Security Pacific Services,* 703 So.2d 402 (Ala.Civ.App. 1997),

*cert. denied.*

In the *Tillery* case, it was also alleged that the person closing the transaction failed to read

or orally inform the plaintiff of certain items contained in the contract. The Court of Civil

Appeals held that there is "no authority for the proposition that the [representative closing the loan] or [the finance company] had a duty to read the document to Tillery, given her obvious literacy." *Tillery v. Security Pacific Services*, 703 So.2d at 405.

For Plaintiff to prevail on any allegation that fraud or misrepresentation was involved in the signing of the Contract, Plaintiff must show she was fraudulently prevented from reading the Contract before signing it. No such allegation is made. There is no indication anything was concealed or suppressed. There is no indication any misrepresentations were made.

In *Wilson v. World Omni Leasing, Inc.*, 540 So.2d 713 (Ala. 1989), the Supreme Court stated as follows:

> In *Munroe v. Pritchett,* 16 Ala. 785, 789 (1849), this Court stated: "If the purchaser closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, 'volenti non fit injuria.'"
>
> In an effort to discourage negligence and inattention to one's own interest, this Court in *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757, 759 (Ala. 1983), held that the right of reliance comes with a duty on the part of plaintiffs to "exercise some measure of precaution to safeguard their interests."
>
> We also noted in *Century Plaza Co. v. Hibbett Sporting Goods, Inc.,* 382 So.2d 7 (Ala. 1986), that "it is true generally that where a party, having the ability to read and understand an instrument, fails to do so, and signs it without reading it, he cannot avoid the obligations embodied in the instrument by pleading ignorance of its contents." *Century Plaza Co. v. Hibbett Sporting Goods, Inc.,* 382 So.2d at 8-9.
>
> Furthermore, in *Syx v. Midfield Volkswagon, Inc.,* 518 So.2d 94 (Ala. 1987), this Court affirming the defendant's summary judgment, took the position that the plaintiff had made a conscious decision not to read the application or his policy; that the plaintiff simply did not exercise any degree of precaution to safeguard his interests; and, as a result, that the plaintiff could not recover." *Wilson v. World Omni Leasing, Inc.*, 540 So. 2d at 717.

The Court in *Wilson v. World Omni Leasing Inc.* stated that the plaintiff "had the opportunity to read the lease agreement, had the opportunity to exercise reasonable care, and had the opportunity to safeguard her interest. Because of her conscious decision not to take advantage of any of these opportunities, she cannot now complain that the lease agreement is unconscionable by pleading ignorance of its contents." *Wilson v. World Omni Leasing, Inc.,* 540 at 718; See also *Tillery v. Security Pacific Services,* 703 So.2d at 404 (for Ms. Tillery to assert that she relied on representations of the defendants, she would have had to close her eyes to the fact that the loan document clearly disclosed that credit life insurance was being financed as part of the loan).

Plaintiff claims that the defendants suppressed the fact that the contract contained arbitration provisions. The Supreme Court of Alabama reviewed a similar situation in its decision in *Green Tree Agency, Inc. v. White*, 719 So.2d 1179 (Ala. 1999). In the *Green Tree Agency* case, the plaintiff sued the defendants alleging fraud, negligence and/or wantonness, deceit, outrage, and breach of fiduciary duty. The defendants in the *Green Tree Agency* case moved to compel arbitration, which was granted. The plaintiff moved the trial court to reconsider its arbitration order and amended the complaint to allege the defendants had fraudulently suppressed the fact that the contract contained an arbitration clause. On the front of the Green Tree Agency contract the following appeared:

**"NOTICE:    SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS OF THIS CONTRACT"**

and

**"CAUTION-IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE"**

The arbitration clause was contained on the back of the Green Tree Agency contract. *Green Tree Agency, Inc. v. White*, 719 So.2d at 1180. In the case *sub judice*, it is stated in the Contract directly above Plaintiffs' signature:

> **"I AGREE TO ALL THE TERMS ON ALL PAGES OF RETAIL INSTALLMENT CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT."**

and

> **"CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT."**

The Supreme Court in *Green Tree Agency* determined, based on *Power Equipment Co. v. First Alabama Bank*, 585 So.2d 1291 (Ala.1991) and the notices on the face of the contract that the plaintiff was on notice of all provisions in the contract and bound thereby. *Green Tree Agency, Inc. v. White*, 719 So.2d at 1180. It appears there is no fiduciary duty to point out to a purchaser provisions that are clearly disclosed in the contract. *Green Tree Agency, Inc. v. White*, 719 So.2d at 1180; see also *Patrick Home Center, Inc. v. Karr*, 730 So.2d 1171, 1174 (Ala. 1999); see also *Johnnie's Homes, Inc. v. Holt*, 790 So.2d 956, 960 (Ala. 2001) (A dealer is under no duty to disclose, or explain, an arbitration clause to a buyer); see also *Green Tree Fin. Corp. of Alabama v. Vinson,* 753 So.2d 497 (Ala. 1999) (FN4 noting that neither Green Tree nor the dealer had a duty to disclose, or explain, the arbitration clause to the purchaser); see also *Patrick Home Ctr., Inc. v. Karr,* 730 So.2d 1171, 1174 (Ala. 1999) (Patrick Homes had no legal duty or obligation to point out, or explain, the arbitration provision to the purchasers); see also *Jim Burke Auto., Inc. v. Murphy,* 739 So.2d 1084, 1087 (Ala. 1999) (Burke had no legal duty or obligation to explain the arbitration provision). Plaintiff, by signing the agreement mentioned above, has agreed to submit all claims to arbitration.

**WHEREFORE, PREMISES CONSIDERED,** GreenPoint's Motion to Stay and to Compel Arbitration is due to be granted. The decisions mentioned in this Motion are controlling in this matter. The arbitration clause is broad enough to cover all claims made by Plaintiff against GreenPoint in this civil action.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim against GreenPoint upon which relief can be granted as, among other things, one or more documents relevant in this matter require that disputes are to be submitted to arbitration.

### SECOND DEFENSE

GreenPoint denies it proximately caused the damages complained of in the Complaint.

### THIRD DEFENSE

The Complaint fails to allege a justifiable controversy.

### FOURTH DEFENSE

Venue is improper, or in the alternative, venue would be more appropriate in another forum.

### FIFTH DEFENSE

GreenPoint denies that Plaintiff was injured or harmed in any way by any alleged act or omission by GreenPoint or any of its agents.

### SIXTH DEFENSE

GreenPoint submits that the claims contained in the Complaint are due to be arbitrated pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

### SEVENTH DEFENSE

GreenPoint pleads that the transactions alleged in Plaintiff's Complaint were voluntarily undertaken and that Plaintiff had the opportunity and obligation to read all documents presented to or signed by Plaintiff.

### EIGHTH DEFENSE

GreenPoint pleads the statute of frauds.

### NINTH DEFENSE

There has not been a mitigation of the alleged damages.

### TENTH DEFENSE

GreenPoint denies that punitive damages are recoverable against it based upon the averments in the Complaint.

### ELEVENTH DEFENSE

GreenPoint avers that the invitation for a court or jury to impose liability on GreenPoint for punitive damages, without guidelines or standards for determination of the amount or proper circumstances for such an award, would deny GreenPoint due process of law in violation of the Fourteenth Amendment to the United States Constitution and in violation of the Constitution of the State of Alabama.

### TWELFTH DEFENSE

The claims alleged against GreenPoint for punitive damages are barred by the Fourteenth Amendment to the United States Constitution and by the Constitution of the State of Alabama.

### THIRTEENTH DEFENSE

The imposition of punitive damages in this case would contravene the due process clause of the United States Constitution and the Constitution of the State of Alabama and the Fourth,

Sixth, Eighth, and Fourteenth Amendments, separately, to the United States Constitution on each

of the following grounds:

A.   The procedures pursuant to which punitive damages are awarded permit the award of punitive damages upon satisfaction of a standard of proof less than the applicable standard of proof required for the imposition of criminal sanctions.

B.   The procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrong doing.

C.   The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of award against GreenPoint.

D.   The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the award of punitive damages.

E.   The procedures pursuant to which punitive damages are awarded are unconstitutionally vague.

F.   The procedures pursuant to which punitive damages are awarded fail to provide a means for awarding separate judgments against alleged joint tortfeasors.

G.   The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of punitive damages.

H.   The procedures pursuant to which punitive damages are awarded fail to provide a clear appellate standard of review of an award of punitive damages.

I.   The procedures pursuant to which punitive damages are awarded may permit the admission of evidence relative to punitive damages in the same proceedings during which liability and compensatory damages are determined.

J.   An award of punitive damages would constitute an arbitrary and capricious taking of property of GreenPoint without due process of law.

### FOURTEENTH DEFENSE

The Court lacks jurisdiction over GreenPoint.

### FIFTEENTH DEFENSE

Potential liability for mental anguish damages should be restricted to conduct which is bound to result in shame, humiliation, and mental anguish, but not mere disappointment, anger, worry, aggravation, resentment, or embarrassment, and in the absence of emotional distress so severe that no reasonable person could be expected to endure it and substantial evidence a defendant was aware of circumstances that would make alleged intentional or negligent conduct result in shame, humiliation, and mental anguish, claims for mental anguish should not be allowed to be submitted to the jury. No emotional injury recovery is available in this case as Alabama follows the "zone of danger" test, which limits recovery of mental anguish damages to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. *See Wal-Mart Stores, Inc. v. Bowers*, 1999 WL 1100909 (Dec. 3 1999 Ala.); *AALAR, Ltd., Inc. v. Francis*, 716 So.2d 1141, 1147 (Ala. 1998). *Accord, White Consol. Indus., Inc. v. Wilkerson*, 737 So.2d 447, 449 (Ala. 1999).

### SIXTEENTH DEFENSE

GreenPoint pleads the doctrine of laches.

### SEVENTEENTH DEFENSE

The claims made against GreenPoint are barred by the applicable Statute of Limitations.

### EIGHTEENTH DEFENSE

All or some of the claims made in the Complaint are preempted by federal law.

### NINETEENTH DEFENSE

All affirmative defenses as itemized in Rule 8 of the Alabama Rules of Civil Procedure are hereby incorporated as if fully set forth herein. In the event of further investigation or

discovery reveals the applicability of any such defenses or other defenses, the right to plead such affirmative defenses as may be appropriate in this case is hereby reserved.  Such defenses are herein incorporated by reference for the specific purpose of not waiving any such defense.

Respectfully submitted,

George M. Ritchey    {RIT005}
Gregory S. Ritchey    {RIT010}
Nicholas J. Ritchey    {RIT021}
Counsel for GreenPoint Credit LLC

## ORAL ARGUMENT IS REQUESTED.

**OF COUNSEL:**
**RITCHEY & RITCHEY, P.A.**
P.O. Drawer 590069
Birmingham, AL  35259-0069
Telephone: 205.271.3100
Facsimile:  205.271.3111

## CERTIFICATE OF SERVICE

This is to certify that on July 15, 2005, a true and correct copy of the above and foregoing document has been electronically filed with the foregoing Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kary Bryant Wolfe, Esquire
WALSTON WELLS ANDERSON & BIRCHALL, LLP
P.O. Box 830642
Birmingham, AL  35283-0642

James D. Patterson, Esquire
Earl P. Underwood, Esquire
LAW OFFICES OF EARL P. UNDERWOOD, JR.
21 South Section Street
Fairhope, AL  36533

13

Jimmy S. Calton, Jr., Esquire
CALTON & CALTON
226 East Broad Street
Eufaula, AL  36027

Robin Garrett Laurie, Esquire
Griffin Lane Knight, Esquire
BALCH & BINGHAM
2 Dexter Avenue
Montgomery, AL  36101-0078

And I hereby certify that I have mailed by United States Postal Service the document to

the following non-CM/ECF participants:

Equifax Information Services, LLC
c/o CSC Lawyers Incorporation Services LLC
150 S. Perry Street
Montgomery, AL  36104-4227

OF COUNSEL

FLORIDA

**RETAIL INSTALLMENT CONTRACT, SECURITY AGREEMENT, WAIVER OF TRIAL BY JURY AND AGREEMENT TO ARBITRATION OR REFERENCE OR TRIAL BY JUDGE ALONE (Contract)**

**MH VARIABLE RATE CONTRACT**

| | |
|---|---|
| LOAN PLAN: | A01 092700 |
| OFFICE NUMBER: | 79037 |
| LOAN SOURCE NO.: | 379999 |
| ACCT NO: | 3731b755 |
| FUNDING CODE: | |

**EXHIBIT A**

BUYER(S): NAME: GEORGE BRUMMITT
NAME: _____
NAME: _____

BUYER'S NAME: _____
ADDRESS: 68 OLD SAYDIS CH RD _____ ON

COUNTY: BAY
STATE: AL    ZIP: 36016

PHONE: (334) 687-7208  S. SEC. #(S): 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

PROPOSED LOCATION OF MANUFACTURED HOME: 7104 BIG DADDY DRIVE D5, PANAMA CITY, FL 32407

"I," "me," "myself" or "my" mean all persons who sign this Contract as buyer or co-buyer, jointly and severally, and "you" or "your" mean the Seller and any assignee. This Contract will be submitted to the Creditor indicated below, at a local office and, if approved, it will be assigned to that Creditor. On the date of this Contract, I buy from you on a credit sale basis the manufactured home described on page 2, together with furnishings, equipment, appliances and accessories included in the manufactured home at the time of purchase (called "Manufactured Home").

CREDITOR: GREENPOINT CREDIT, LLC

PROMISE TO PAY: I promise to pay you at such address as you may direct the Unpaid Balance shown on page 2 of this Contract (Item 5) with interest at the initial rate of ___10.50___ % per year. The interest rate I will pay will change in accordance with the provisions of this Contract. I will pay this amount in installments as shown in the payment schedule, or as recomputed due to changes in the interest rate, until the Unpaid Balance is fully paid. If, on ___10/01/30___, I still owe any amount under this Contract, I will pay such amount in full on that date, which is called the "Maturity Date." Each monthly payment will be applied as of its scheduled due date. If no interest rate is disclosed above, the initial interest rate is the Annual Percentage Rate shown below.

INTEREST RATE: My initial interest rate may not be based on the index used to make later adjustments. My interest rate may change ___11___ months after my first payment is due and every ___12___ months thereafter based on movements in the average of interbank offered rates for one year U.S. dollar denominated deposits in the London market based upon the quotation of major banks as published in the "Money Rates" section of The Wall Street Journal on the first publication day of each month, and known as the London Interbank Offered Rates (LIBOR), which is the index rate. This is called my "interest rate change date." My interest rate cannot increase or decrease by more than ___2.00___% at any interest rate change or by more than ___5.00___% over the term of the Contract. The interest rate will equal the index rate in effect ___45___ days before the interest rate change date plus a margin of ___5.50___% (rounded to the ___NEAREST 1/8___ of one percentage point) unless the interest rate caps limit the amount of change in the interest rate. If this index rate is no longer available, you may choose a new index that is based on comparable information.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate (which is subject to change): 12.28 % | FINANCE CHARGE The dollar amount the credit will cost me (which is subject to change): $ 87,875.90 | Amount Financed The amount of credit provided to me or on my behalf: $ 31,055.74 | Total of Payments The amount I will have paid after I have made all payments as scheduled (based on the current Annual Percentage Rate which is subject to change): $ 118,931.64 | Total Sale Price The total cost of my purchase on credit (which is subject to change) including my down payment of $ 500.00 : $ 119,431.64 |
|---|---|---|---|---|
| | | See #7 (page 2) | Fin. Charge + Amount Fin. | Total Pay. + Down Payment |

| See Contract terms for additional information about nonpayment, default, required repayment in full before the scheduled due date, and prepayment refunds and penalties. **Prepayment:** If I pay off early, I will not have to pay a penalty, but I will not be entitled to a refund of the Prepaid Finance Charge, if any. | My payment schedule will be: | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|
| | | 12 | $ 285.00 | Monthly, beginning NOVEMBER 01 , 2000 |
| | | 348 | $ 331.93 | Monthly, beginning NOVEMBER 01 , 2001 |
| | | | $ _____ | Monthly, beginning _____ , _____ |
| | | | $ _____ | Monthly, beginning _____ , _____ |

**Security:** I give you a security interest in the goods or property being purchased
**Late Charge:** If a payment is more than ___15___ days late, I will be charged ___5___ % of the unpaid amount of such payment, not to exceed $ 5.00
**Variable Rate:** My Contract contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
**Assumption:** Someone buying my Manufactured Home may, under certain circumstances, be allowed to assume the remainder of the Contract on the original terms.
**Estimates:** All numerical disclosures except the late payment disclosures are estimates.

The above disclosures are based on terms in effect on the date this Contract is signed. If the interest rate changes, actual Amount of Payments, Annual Percentage Rate, Finance Charge and Total of Payments will be more or less than disclosed above.

**Description of Manufactured Home:**

TRADE NAME: PALM HARBOR HOMES          MODEL: 2348B

YEAR: 2000   NEW: _____   USED: X          LENGTH: 52 ft   WIDTH: 24 ft

SERIAL NUMBERS: PH233087A          PH233087B

| ITEM | SERIAL NUMBER | ITEM | SERIAL NUMBER |
|------|---------------|------|---------------|

ADDITIONAL ACCESSORIES AND FURNISHINGS: REFRG-GE   A/C-INTRTHRM          RGE-GE

092700

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including Sales Tax of $ 1,820.00): $ 31,320.00
2. a. Cash Down Payment $ 500.00
   b. Trade-In (Year, Make, Model): _____
      Length _____ Width _____
      Gross Value $ _____ .00 Liens $ _____ .00
      (Seller to pay off)
      Net Trade-In Value $ _____ .00
   Total Down Payment $ 500.00
3. Unpaid Balance of Cash Price (1 minus 2) $ 30,820.00
4. Amounts paid to others on my behalf:*
   a. To Insurance Companies:
      (1) Property Insurance $ _____ .00
      (2) Credit Life Insurance $ _____ .00
   b. To Public Officials:
      (1) Certificate of Title $ 59.50
      (2) FILING FEES $ 67.20
   c. To Creditor:
      For: _____ $ _____ .00
   d. To: _____
      For: DOC STAMPS
      $ 109.04
   e. To: _____
      For: _____
      $ _____ .00
   f. To: _____
      For: _____
      $ _____ .00
   g. To: GREENPOINT CREDIT, LLC
      For: PROCESSING FEE
      $ 100.00
   h. To: _____
      For: _____
      $ _____
   Total (a + b + c + d + e + f + g + h) $ 335.74

5. Unpaid Balance (3 plus 4) $ 31,155.74

6. Prepaid Finance Charge $ 100.00

7. Amount Financed (5 minus 6) $ 31,055.74

* I understand and agree that a portion of certain of these amounts may be retained by you or your affiliate.

## INSURANCE

**PROPERTY INSURANCE:** Property Insurance on the Manufactured Home is required for the term of this Contract. I have the right to choose the person through whom it is obtained. By marking the appropriate line below, I elect to buy the coverage indicated from you for the term and premium shown, and I want it financed on this Contract.

| Type of Insurance | Term | Premium |
|-------------------|------|---------|
| __ Physical Damage Coverage BROAD FORM | 0MOS | $ .00 |
| __ | _____ | $ _____ |
| __ | _____ | $ _____ |

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS INDICATED IN THE PROPERTY INSURANCE SECTION ABOVE.

**CREDIT LIFE INSURANCE:** Credit Life Insurance is not required for this Contract or a factor in its approval. If I elect Credit Life Insurance, the name(s) of the proposed insured(s) are:

Proposed Insured _____
Proposed Insured _____
(Only spouse can be insured jointly.)

This insurance may not pay off all of my debt, and the exact amount of coverage is shown on my policy or certificate. My signature indicates my election to obtain Credit Life Insurance coverage for the term and premium shown:

| Type of Coverage | Term | Premium |
|------------------|------|---------|
| __ Single | _____ | $ _____ |
| __ Joint | _____ | $ _____ |

_____ Date _____
(signature)

_____ Date _____
(signature)

(If joint coverage is desired, both proposed insureds must sign.)

**VARIABLE RATE:**

**a. Monthly Payment Changes.** My monthly payment amount will change each time my interest rate is adjusted. I will pay the amount of the new monthly payment beginning the first monthly payment at the interest rate change date. The monthly payment amount would fully amortize the remaining unpaid balance I am expected to owe on the interest rate change date at the adjusted interest rate in equal monthly payments over the remaining Term of this Agreement.

**b. Notice of Interest Rate and Monthly Payment Changes.** You will send me notice of an adjustment in the interest rate and monthly payment at least 25 days before the adjustment. This notice will contain information about the index rate, interest rate, payment amount and remaining unpaid balance.

**c. Conversion to Fixed Rate.** I may choose to convert this Contract to a fixed rate Contract at any time beginning ___ZERO___ years from the date of this Contract and ending _____30_____ years from the date of this Contract. In order to convert to a fixed rate, I must not be in default under the terms of this Contract, I must notify you in writing of my desire to convert to a fixed rate, I must execute a revision agreement and I must pay a nonrefundable conversion fee. The new fixed interest rate will be your standard fixed interest rate for a comparable Contract on the date that you receive my written notification. The new fixed rate will take effect on the "Conversion Date," which shall be my next payment due date that is at least __30__ days after your timely receipt of a revision agreement signed by all Borrowers together with a nonrefundable conversion fee of $ _200.00_____. The new fixed rate and the Conversion Date are subject to change if my revision agreement and fees are received after the date specified in the revision agreement. My new payment amount will be effective with the first payment following the Conversion Date.

**SECURITY INTEREST:** I grant you a security interest under the Uniform Commercial Code in (1) the Manufactured Home and in all goods that are or may hereafter by operation of law become accessions to it, (2) all appliances, machinery, equipment and other goods furnished with the Manufactured Home (whether or not installed or affixed to it) including but not limited to the items listed as "Additional Accessories and Furnishings" on page 1 of this Contract, (3) any refunds of unearned insurance premiums financed in this Contract, (4) any substitutions or replacements of the foregoing, and (5) all proceeds of such Manufactured Home and accessions, and of any Additional Accessories and Furnishings. This security interest secures payment and performance of my obligations under this Contract, including any additional debt arising because of my failure to perform my obligations under this Contract and includes any contractual extensions, renewals or modifications. My execution of this Contract constitutes a waiver of my personal property and homestead exemption rights to the personal property herein described. I will sign and deliver to you whatever financing statements and other documents you deem necessary to allow you to perfect your security interest in any personal property and fixtures. I agree that you may file this security instrument or a reproduction thereof in the real estate records or other appropriate index as a financing statement for any of the items specified above. Any reproduction of this security instrument or any other security agreement or financing statement, and any extensions, renewals, or amendments thereof, shall be sufficient to perfect a security interest with respect to such items.

**PREPAYMENT: I MAY PREPAY THIS CONTRACT IN FULL OR IN PART AT ANY TIME WITHOUT PENALTY, BUT I WILL NOT BE ENTITLED TO A REFUND OF THE PREPAID FINANCE CHARGE, IF ANY. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGE IN THE DUE DATES OR AMOUNTS OF MY MONTHLY PAYMENTS, UNLESS YOU AGREE IN WRITING TO THOSE CHANGES.**

**PROPERTY INSURANCE:**

**a. Minimum Coverage.** I am required to provide physical damage insurance coverage protecting the Manufactured Home for the term of this Contract against loss by fire, hazards included within the term "extended coverage" and any other hazards, including flood, for which you require insurance, in an amount equal to the lesser of the actual cash value of the Manufactured Home or the remaining unpaid balance I owe from time to time on this Contract (the "Minimum Coverage"). The insurance policy will contain a loss payable clause protecting you (as your interest may appear), and provide for a 10-day notice of cancellation to you. Unless you consent in writing, I shall not add any additional loss payee to the insurance policy. I have the right to choose the person through whom the property insurance policy is obtained. If my insurance coverage expires or is cancelled prior to payment in full of this Contract, I must obtain no less than the Minimum Coverage at my expense for the remaining term of this Contract. Should I fail to maintain the Minimum Coverage, you may, but are not obligated to, obtain insurance coverage. I agree that any insurance you purchase may be for the protection of only your interest in the Manufactured Home, may not fully protect me in the event of a loss, and may be for such reasonable period as you determine. If you decide, in your sole discretion, to obtain insurance, you will notify me of that fact and the cost, plus interest at the Contract rate, will be added to my debt. I will repay such amount during the term of the policy in the manner requested by you. I understand that the insurance premiums may be higher if you must purchase the insurance than might be the case if I had purchased the insurance, and that you may purchase the insurance from an affiliated company which may receive a profit for this service.

**b. Assignment and Application of Insurance Proceeds.** I hereby grant and assign to you the proceeds of any and all insurance coverage on the Manufactured Home, including any optional coverage, such as earthquake insurance, which is in type or amount is beyond the Minimum Coverage. In the event of a loss to the Manufactured Home, I shall give prompt notice to you and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, you may do so on my behalf. All physical damage insurance proceeds, including proceeds from optional coverage, shall be applied to restoration or repair of the Manufactured Home, unless you and I agree otherwise in writing or unless such restoration or repair is not economically practical or feasible, or your security interest would be lessened. If such restoration or repair is not practical or feasible, or your security interest would be lessened, you shall apply the insurance proceeds to the remaining unpaid balance of this Contract, whether or not then due, and give me any excess. I authorize any insurer to pay you directly. I hereby appoint you as my limited attorney-in-fact to sign my name to any check, draft, or other document necessary to obtain such insurance payments.

**LATE CHARGE:** I agree to pay a late charge for late payment as set forth on the front of this Contract. Only one late charge will be made on any delinquent installment regardless of the period for which that installment remains in default. After this Contract matures, whether by acceleration or otherwise, I will not be charged a late charge.

**EVENTS OF DEFAULT:** I will be in default under this Contract if: (a) I fail to make any payment when due; (b) I fail to timely make rental payments, or to pay other charges and assessments, relating to the real property and/or facility on which the Manufactured Home is located; (c) I violate restrictive covenants, rules or regulations relating to the real property and/or facility where the Manufactured Home is located; (d) I fail to keep the Manufactured Home in good repair and condition, as you may reasonably determine; (e) I remove the Manufactured Home from the address shown on this Contract unless I notify you in advance and receive your written consent; (f) I sell or attempt to sell or to transfer any beneficial interest in the Manufactured Home without first obtaining your written consent; (g) I allow the Manufactured Home to become part of any real estate without first obtaining your written consent; (h) I encumber or abandon the Manufactured Home or use it for hire or illegally; (i) I fail to promptly pay any taxes and other liens and encumbrances on the Manufactured Home or on the real property on which it is located, if this is my responsibility; and/or (j) I fail to do anything else which I have promised to do under this Contract.

**NOTICE OF DEFAULT:** If any of the above specified Events of Default have occurred, you may do whatever is necessary to correct my default. You will, except as set forth below, first give me a Notice of Default and Right to Cure Default before you accelerate payment of the remaining unpaid balance I owe you or repossess or foreclose on any property which secures this Contract. The Notice will tell me what my default is and how I can cure it. Except as required by applicable law, you are not required to send me this Notice when (1) you have already sent a Notice twice within the preceding one-year period, (2) I have abandoned or voluntarily surrendered the Manufactured Home, or (3) other extreme circumstances exist.

**REMEDIES UPON DEFAULT:** If I do not cure the default, you may do either or both of the following at the end of the notice period, as allowed by applicable law: (a) you can require me to immediately pay you the entire remaining unpaid balance due under this Contract plus accrued interest or (b) you can repossess the Manufactured Home pursuant to the security interest I give you under this Contract. If you are not required to send me the Notice of Default and Right to Cure Default, you will have these rights immediately upon my default. Once you get possession of the Manufactured Home you will sell it. If the amount from the sale, after expenses, is less than what I owe you, I will pay you the difference except as otherwise provided by law. All remedies are cumulative and you may enforce them separately or together in any order you deem necessary to protect your security.

**ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:**

**a. Dispute Resolution.** Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. **YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.**

**b. Arbitration.** Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be conducted in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the American Arbitration Association ("AAA") also shall apply. The arbitrator(s) shall follow the law and shall give effect to statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in

writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice.

**c.  Judicial Reference or Trial by a Judge.** If requested by either you or me, any controversy or claim under subparagraph (a) that is not submitted to arbitration as provided in subparagraph (b) shall be determined by reference to a referee appointed by the court who, sitting alone and without jury, shall decide all questions of law and fact. You and I shall designate to the court a referee selected under the auspices of the AAA in the same manner as arbitrators are selected in AAA-sponsored proceedings. The referee shall be an active attorney or retired judge. If the court where the controversy is venued lacks the power to appoint a referee, the controversy instead shall be decided by trial by a judge without a jury.

**d.  Self-Help, Foreclosure, and Provisional Remedies.** The provisions of this paragraph shall not limit any rights that you or I may have to exercise self-help remedies such as set-off or repossession, to foreclose by power of sale or judicially against or sell any collateral or security, or to obtain any provisional or ancillary remedies from a court of competent jurisdiction before, after or during the pendency of any arbitration under subparagraph (b) above. Neither the obtaining nor the exercise of any such remedy shall serve as a waiver of the right of either you or me to demand that the related or any other dispute or controversy be determined by arbitration as provided above.

**ATTORNEY FEES:** If I prevail in any legal action or arbitration proceeding which is commenced in connection with the enforcement of this Contract or any instrument or agreement required under this Contract, or in connection with any dispute relating to this Contract, you will pay my reasonable attorney fees, court costs and necessary disbursements incurred in connection with such action or proceeding, as determined by the court, the referee, or the arbitrator(s) in accordance with the law. If you prevail in any such action or proceeding, or in the exercise of any self-help remedy as described above, I will pay any reasonable fees imposed on you by an attorney who is not your salaried employee, together with court costs and necessary disbursements to the full extent permitted by law.

**OTHER TERMS AND CONDITIONS:** I agree: (a) to pay with my monthly installments, if requested by you to do so, the estimated amount necessary to pay yearly taxes, assessments and insurance premiums that will become due within the next twelve-month period; (b) to pay you a transfer fee if I sell the Manufactured Home, unless such fee is prohibited by law; (c) to pay interest at the Contract rate on the remaining unpaid balance plus accrued interest, from the date of maturity until paid in full; (d) to reimburse you, immediately upon your demand, with interest at the Contract rate, the amount of funds you actually advance on my behalf to correct my default; and (e) that if I am married, and residing in a community property state, both my community property and separate property will be liable for all payments due under this Contract.

**ASSIGNMENT:** You may assign this Contract to any person or entity. All rights granted to you under this Contract shall apply to any assignee of this Contract.

**CREDIT INFORMATION:** You may investigate my credit history and credit capacity in connection with opening and collecting my account and share information about me and my account with credit reporting agencies. You may sell or otherwise furnish information about me, including insurance information, to all others who may lawfully receive such information. You may furnish specific information about the Manufactured Home and any insurance policies on the Manufactured Home to any insurance agent to enable such agent to quote premiums to me and solicit my insurance business.

**WAIVER:** Waiver of any default shall not constitute a waiver of any other default. No term of this Contract shall be changed unless in writing and signed by one of your officers. This Contract is the entire agreement between us and I agree that no oral or implied representations have been made to induce me to enter into this Contract.

**VALIDITY:** Wherever possible each provision of this Contract shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Contract shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Contract. This Contract shall be of no effect until and unless signed by me and you. In no event shall any charge under this Contract exceed the highest amount allowed by applicable law. If any excess charge is received, such excess shall be refunded or applied to the amount due.

**GOVERNING LAW:** Each provision of this Contract shall be construed in accordance with and governed by the laws of the state of Florida, provided that to the extent you have greater rights or remedies under Federal law, such choice of state law shall not be deemed to deprive you of such greater rights and remedies under Federal law.

**NOTICE**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**YOU AND I HAVE READ AND FULLY UNDERSTAND THIS CONTRACT, INCLUDING THE PARAGRAPH CALLING FOR RESOLVING DISPUTES BY ARBITRATION, REFERENCE, OR TRIAL BY A JUDGE, AND NOT BY JURY TRIAL, AND AGREE THAT THIS CONTRACT SETS FORTH OUR ENTIRE AGREEMENT AND THAT NO OTHER PROMISES HAVE BEEN MADE.**

**NOTICE TO THE BUYER:**
**1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

ACCEPTED: The foregoing Contract is hereby assigned under the terms of the Assignment below.

**I AGREE TO ALL THE TERMS ON ALL PAGES OF THIS RETAIL INSTALLMENT CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT.**

BUYER(S) SIGNATURE(S):

SELLER:    GREENPOINT CREDIT, LLC

GEORGE BRUMMITT
*George Brummitt*

SELLER'S ADDRESS:    5401 CORPORATE WOODS DR ST 150

PENSACOLA, FL 32504

This Contract has been assigned to Bank One, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2000 (between such Trustee and GreenPoint Credit LLC).

SELLER'S SIGNATURE:

SELLER'S TITLE:

DATE OF THIS CONTRACT:

GreenPoint Credit LLC.
Peter Paul
President and CEO

### ASSIGNMENT BY SELLER

**TO CREDITOR INDICATED ON PAGE 1 ("Creditor")**

With respect to this retail installment contract ("Contract") signed by one or more buyers ("Buyer"), SELLER represents and warrants that: (1) Buyer's credit statement submitted herewith is completely accurate unless otherwise specified; (2) Buyer was legally competent to contract at the time of Buyer's execution of this Contract; (3) this Contract arose from the bona fide sale of the merchandise described in this Contract; (4) the down payment was made by Buyer in cash unless otherwise specified and no part thereof was loaned directly or indirectly by Seller to Buyer; (5) any trade-in, or other consideration, received as any part of the down payment is accurately described on page 2 and has been valued at its bona fide value, and any amount owed on such trade-in or other property is accurately described on page 2 and has been paid off by Seller prior to or contemporaneously with the assignment of this Contract to Creditor; (6) there is now owing on this Contract the amount set forth herein; (7) this Contract and any guaranty submitted in connection herewith is in all respects legally enforceable against each purported signatory thereof; (8) Seller has the right to assign this Contract and thereby to convey good title to it; (9) in the event of any claim or defense asserted by any Buyer, or any heirs or assigns of Buyer, with respect to the Manufactured Home or other property or consideration transferred pursuant to this retail installment contract, Seller agrees that it will indemnify and hold Creditor harmless from all such claims and defenses as well as from all costs reasonably incurred by Creditor in connection therewith, including but not limited to reasonable attorney fees and court costs; and (10) in accordance with the Fair Credit Reporting Act, Seller has notified Buyer that this Contract is to be submitted to Creditor.

For value received, Seller hereby assigns to Creditor all its rights, title and interest in this Contract and the property which is the subject matter hereof and authorizes Creditor to do everything necessary to collect and discharge same. All the terms of any existing written agreements between Seller and Creditor governing the purchase of Contracts are made a part hereof by reference, it being understood that Creditor relies upon the above warranties and upon said agreements in purchasing this Contract.

FL350818-1199

Funds DOR Stamp Tax is Required by Law in the Amount of $ 109.04 as or will be Paid to the Florida Dept. of Revenue. Cn of Reg. 95 - 3968356 - 78 - 01

PAGE 6 OF 6

5401 Corporate Woods Drive
Suite 150
Pensacola, FL 32504
Tel. (850) 479-1667
Fax (850) 479-4668



**GreenPoint** **Credit**

Account # _37316755_
Name _George Brummitt_

Congratulations on the purchase of your manufactured home!
GreenPoint Credit has been assigned an interest in the installment sales contract
executed on _9-28-00_ for the purchase of your home.
Please accept this letter as notice of an error, identified below, which was
discovered on the contract.

The First Payment Due Date

☐ was not disclosed.
☒ was incorrectly disclosed as _11-1-00_ .

It should have been disclosed as _11-16-00_ .

The Second Year Payment Due Date (variable rate only)

☐ was not disclosed.
☒ was incorrectly disclosed as _11-1-01_ .

It should have been disclosed as _11-16-01_ .

The Maturity Date

☐ was not disclosed _____
☒ was incorrectly disclosed as _10-1-30_ .

It should have been disclosed as _10-16-30_ .

If you have any questions, please contact the Pensacola office at the address
shown below.

Sincerely,

_Charlotte Gray_

GreenPoint Credit
5401 Corporate Woods Dr., Suite 150
Pensacola, FL 32504

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

```
┌─────────────────────┐
│      EXHIBIT        │
│        B            │
│                     │
└─────────────────────┘
```

GEORGE BRUMMITT,                     *
                                     *
            Plaintiff                *
                                     *
v.                                   *   Case Number 2:05 CV-537-F
                                     *
EQUIFAX INFORMATION SERVICES,        *
LLC, et al.,                         *
                                     *
            Defendants.              *


STATE OF FLORIDA        *
                        *       A F F I D A V I T
ESCAMBIA COUNTY         *

Before me, the undersigned authority, a notary public in and for said county and state, personally appeared Earl Baker, who is known to me, and who, being by me first duly sworn according to law, upon oath deposes and says as follows:

1.      My name is Earl Baker and I am over the age of nineteen (19) years   I am the Regional Manager for the Pensacola Region of Green Tree Servicing, LLC ("Green Tree"), as servicer for GreenPoint Credit LLC ("GreenPoint")   I have personal knowledge of the facts set forth in this affidavit   GreenPoint is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business in San Diego, California and is qualified to do business in the State of Alabama   I do hereby certify that as Regional Manager of Green Tree, certain files and records of GreenPoint are under my direct supervision, custody and control, including the file which is maintained in connection with the financing of a 2000 Palm Harbor Homes Model 2348B manufactured home, Serial No   PH233087A&B (the "manufactured home") for George Brummitt (hereinafter referred to as the "Plaintiff")   I have

carefully examined said file and the documents contained therein and have likewise carefully examined the contract in the file. The GreenPoint/Green Tree account numbers for the file are 37316755/78503111.

2    The records of GreenPoint reflect that the Plaintiff entered into a RETAIL INSTALLMENT CONTRACT, SECURITY AGREEMENT, WAIVER OF TRIAL BY JURY AND AGREEMENT TO ARBITRATION OR REFERENCE OR TRIAL BY JUDGE ALONE (hereinafter referred to as the "Contract") for the purchase of the manufactured home from GreenPoint on the 28th day of September, 2000, a true and correct copy of which is attached to the Motion to Compel Arbitration being filed by GreenPoint. The Contract was executed by the Plaintiff and gave to GreenPoint a security interest in the manufactured home. The Plaintiff agreed to make payments as set out in the Contract for the purchase of the manufactured home.

3.    The Plaintiff took possession of the manufactured home after executing the Contract and Plaintiff or other third parties designated by Plaintiff have maintained physical possession of the manufactured home since late September or early October 2000. GreenPoint's records reflect that until July 2004, Plaintiff's son, David Brummitt, was making payments for the Plaintiff's account and was living in the manufactured home. GreenPoint's records reflect that payments are now being paid in accordance with the terms of the Contract, and the account is current through July 2005.

4.    GreenPoint is not a manufacturer, merchant, dealer or seller of the manufactured home purchased by the Plaintiff. GreenPoint's only connection with the sales transaction was as the seller and financier of the manufactured home.

2

5.      I have worked in manufactured home loans for GreenPoint, Green Tree and other lending institutions for more than twenty (20) years.

6.      The financing of manufactured homes is heavily regulated by the Congress of the United States. (i.e., the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq*., Federal Reserve Board Regulation Z, 12 C.F.R. Part 226, etc.)

7       This affidavit is executed for the purpose of proving the necessary facts to allow the Court to enter an order submitting the claims being made by the Plaintiff to arbitration

Earl Baker
Regional Manager

STATE OF FLORIDA        *
                        *       A C K N O W L E D G E M E N T
ESCAMBIA COUNTY         *

I, the undersigned, a Notary Public in and for said County and State, hereby certify that Earl Baker, as Regional Manager of Green Tree Servicing, LLC, as servicer for GreenPoint Credit, LLC, whose name is signed to the foregoing Affidavit, and who is known to me, acknowledged before me on this date that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation

Given under my hand and official seal this _15_ day of _July_, 2005

Notary Public
My Commission Expires: _10/19/07_


Cammylla R Custer
My Commission DD258613
Expires October 19, 2007

3